STEPHANIE YONEKURA
Acting United States Attorney
SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division
PAUL H. ROCHMES
Assistant United States Attorney, SBN 077928
        Room 7211, Federal Building
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone:  (213) 894-2413
        Facsimile:  (213) 894-0115
        Email: paul.rochmes@usdoj.gov

Attorneys for Plaintiff the United States of America

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    vs.<br><br>EILEEN McGREW, PHH MORTGAGE CORPORATION, STATE OF CALIFORNIA FRANCHISE TAX BOARD.<br><br>        Defendants. | Case No. CV14-02647-R(ASx)<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW SUBMITTED BY PLAINTIFF UNITED STATES OF AMERICA PURSUANT TO ORDER GRANTING THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT<br><br>Hearing Date: 12/15/2014<br><br>Time: 10:00 a.m.<br><br>Location: Courtroom: 8<br>                United States Courthouse<br>                312 N. Spring Street<br>                Los Angeles, CA 90012 |

## FINDINGS OF FACT

1.  On or about May 10, 1996, defendant Eileen McGrew and her former husband, Mark K. McGrew ("Kenneth McGrew") acquired the real property that is the subject of this action (the "Subject Property") pursuant to a grant deed that had been issued to them by the former owner.

2.  The Subject Property is a single family residence that is located in Moorpark, California 93021 and is legally described as:

Lot 66, Tract No. 3963-1, in the City of Moorpark, County of Ventura, State of California, as per map recorded in Book 107, page 90 through 103 inclusive of maps, in the office of the County Recorder of said county. Except all of the coal, lignite, coal oil, petroleum, naptha, asphalt, maltha, brea, natural gas, and all kindred or similar substances and other rights as reserved by Simi Land and Water company in deed recorded November 16, 1889, in Book 29, page 514, of deeds.

By instruments recorded October 13, 1972, in book 4475, page 900 and October 7, 1986, as instrument 86-138922, official records, all rights to enter upon the surface of said land and to use any of the subsurface of said land above a depth of 100 feet below the surface thereof were relinquished.

3.  Between on or about June 26, 1996 and March 1, 2010, when Kenneth McGrew transferred his interest in the Subject Property to Eileen McGrew, Kenneth McGrew and Eileen McGrew owned the Subject Property as community property.

4.  On or about December 20, 2004, the Internal Revenue Service ("IRS") made assessments against Kenneth McGrew for outstanding federal income tax liabilities for the 2000 and 2001 tax years, based on substitutes for returns that the IRS had prepared on Kenneth McGrew's behalf.

2

5.  On or about May 29, 2006, the IRS made an assessment against Kenneth McGrew for outstanding federal income tax liabilities for the 2002 tax year based on a substitute for return that the IRS had prepared on Kenneth McGrew's behalf.

6.  On or about August 8, 2007, Kenneth McGrew filed federal income tax returns for the 2000 through 2005 tax years.

7.  After receiving the returns, the IRS abated portions of the assessments that it had made previously, based on the substitutes for returns for 2000, 2001, and 2002, and made assessments against Kenneth McGrew with respect to 2003 through 2005 (collectively, the "Assessments"), as follows:

| Form | Tax Period | Assessed Tax/Penalty | Assessment Date |
|------|-----------|----------------------|-----------------|
| 1040 | 2000 | $25,019.00 | 12/20/2004 |
| 1040 | 2001 | $61,267.15 | 12/20/2004 |
| 1040 | 2002 | $16,677.00 | 5/29/2006 |
| 1040 | 2003 | $31,500.19 | 9/24/2007 |
| 1040 | 2004 | $5,623.27 | 9/17/2007 |
| 1040 | 2005 | $27,215.32 | 9/24/2007 |

8.  On the following dates, the IRS filed the following Notices of Federal Tax Liens with the Ventura County Clerk and Recorder with respect to the Assessments and subsequent accruals (the "NFTLs"):

| Form | Tax Period | Recorded | Lien Number | Amount |
|------|-----------|----------|-------------|--------|
| 1040 | 2000 | 10/04/2006 | 00210744 | $59,017.66 |
| 1040 | 2001 | 10/04/2006 | 00210744 | $163,181.07 |
| 1040 | 2002 | 10/04/2006 | 00210744 | $25,490.02 |
| 1040 | 2003 | 10/22/2007 | 00198255-0 | $44,643.99 |
| 1040 | 2004 | 10/22/2007 | 00198255-0 | $7,384.05 |
| 1040 | 2005 | 10/22/2007 | 00198255-0 | $32,443.71 |

3

9.  Kenneth McGrew's delinquent tax liabilities include additional accrued but unassessed interest, penalties, and other statutory additions which have continued to accrue from the dates of the Assessments to the present date.

10.  The NFTLs have not been released by the IRS, and the Subject Property has not been discharged from the liens.

11.  As of October 15, 2014, there remained due and owing the following amounts:

| Tax Year | Unpaid Assessed Balance | Accrued Interest | Total Liability |
|---|---|---|---|
| 2000 | $ 39,596.96 | 21,013.37 | $60,610.33 |
| 2001 | $91,150.11 | $41,513.15 | $132,663.26 |
| 2002 | $23,480.82 | $10,484.55 | $33,965.37 |
| 2003 | $45,642.34 | $14,760.33 | $60,402.67 |
| 2004 | $7,855.94 | $2,514.59 | $10,370.53 |
| 2005 | $35,971.71 | $11,077.72 | $47,049.43 |

TOTAL: $345,061.59.

12.  On or about January 21, 2004, Eileen McGrew filed a petition in the County of Ventura Superior Court, Case No. SD030078, for dissolution of her marriage to Kenneth McGrew (the "Dissolution Proceeding").

13.  On or about September 19, 2006, the Court in the Dissolution Proceeding entered a Judgment terminating Eileen McGrew and Kenneth McGrew's marriage and stating that the marital status ended on September 14, 2006.

14.  On or about September 18, 2009, Eileen McGrew's attorney filed a trial brief on Eileen McGrew's behalf in the Dissolution Proceedings which stated that there was a federal tax lien on the Subject Property in the amount of $247,688.75 as of October 4, 2006.

4

15.  In September 2008, Eileen McGrew's attorney filed a Mandatory Settlement Conference Statement on Eileen McGrew's behalf in the Dissolution Proceedings which stated that there was a tax lien "against the former family residence in the hundreds of thousands of dollars."

16.  On or about September 28, 2009, the Court in the Dissolution Proceeding issued a Ruling on Submitted Matter (the "Property Distribution Order"), which, among other things, (1) found that the date of separation was February 15, 2002, and (2) allocated community assets and liabilities between Kenneth McGrew and Eileen McGrew.  In allocating the community assets and liabilities, the Court ordered Kenneth McGrew to transfer title to the Subject Property to Eileen McGrew, noted that the Subject Property was "encumbered by an IRS tax lien," and ordered that the "tax obligation to the IRS" was Kenneth McGrew's responsibility.

17.  Pursuant to the Property Distribution Order, on or about March 1, 2010, the Executive Officer and Clerk of the Court in the Dissolution Proceedings executed an Interspousal Transfer Deed on Kenneth McGrew's behalf, transferring Kenneth McGrew's interest in the Subject Property to Eileen McGrew as her sole and separate property.

18.  On or about June 26, 1996, Eileen McGrew and Kenneth McGrew obtained a loan from PHH Mortgage Corporation (the "PHH Loan") in connection with their purchase of the Subject Property.

19.  The Subject Property is secured by a deed of trust in favor of defendant PHH Mortgage Corporation that was recorded on or about July 2, 1996 to secure the payment of the Loan.

20.  On or about March 1, 2004, December 29, 2005, September 29, 2008, August 31, 2009 and November 23, 2009, the State of California Franchise Tax Board (the "FTB") recorded liens against Kevin McGrew to secure the payment of delinquent California State income taxes for the tax years ending December 31,

2001, December 31, 2003, December 31, 2002 and December 31, 2004, December 31, 2005 and December 31, 2006, respectively. As of October 15, 2014, the delinquent California State tax liabilities totaled $52,798.72.

21.  On October 29, 2014 the United States filed a Stipulation Between Plaintiff United States of America And Defendant State of California Franchise Tax Board (Docket No. 21)(the "FTB" Stipulation"), regarding their respective lien priorities.

22.  The PHH deed of trust is superior to the California State and federal tax liens.

23.  As of October 31, 2014, the PHH Loan pay-off amount was $117,188.54.

24.  Any uncontroverted fact deemed more appropriately designated as a conclusion of law or as a mixed conclusion of fact and law is incorporated herein as a conclusion of law.

## CONCLUSIONS OF LAW

1.    Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(c).

2.     A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  See, Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); but see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)("[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment….").

3.      The moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Rather, if the moving party satisfies its initial burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial.  Id. at 323-34;  Fed. R. Civ. P., 56(c)(1). "This burden is not a light one."  In re Oracle Corp. Sec. Litig., 627 F.3d 376,387 (9th Cir. 2010).

4.      Regardless of when federal taxes are actually assessed, the taxes are considered due and owing, and constitute a liability, as of the date the tax return for the particular period is required to be filed.  Internal Revenue Code (26 U.S.C.) § 6151(a);  Medina v. Offord Finance, Inc., 205 B.R. 216, 221 n. 13 (B.A.P. 9th Cir. 1996)(IRC § 6151 construed as providing that taxes are due and payable on the due date of the return, not date of assessment;  Pan American Van Lines v. United States, 607 F.2d 1299 (9th Cir. 1979)(Tax due on the date return is originally due, not on date of any extension);  Hartman v. Laucher, 238 F.2d 88, 887 (8th Cir. 1956)("by the terms of the Internal Revenue Code income tax liability matures on the day the return is required to be filed, and the correct amount of the tax liability becomes due at that time, regardless when the deficiency assessment may be made");  Simson v. United States, 56 F.Supp.2d 1193 (D.Or. 1999)(courts have construed section 6151 to mean that regardless of when taxes are assessed, the taxes are considered "due and owing – and constitute a liability – as of the date the tax return for the specified period is required to be filed")(citing Baasch v. United States, 742 F.Supp. 65, 68 (E.D.N.Y.1990), aff'd 930 F.2d 911 (2nd Cir. 1991)(Table)).

5.      Pursuant to 26 U.S.C. § 7672, income tax returns, and other returns that are made on the basis of the calendar year, are required to be filed on or before the 15th day of April following the close of the calendar year.  Accordingly, Kenneth McGrew's outstanding federal income tax liabilities for 2000 through

7

2005 became due and payable on April 16, 2001 (for 2000), April 15, 2002 (for 2001), April 15, 2003 (for 2002), April 15, 2004 (for 2003), April 15, 2005 (for 2004) and April 17, 2006 (for 2005). (The 2001 and 2005 returns were due on April 16, 2002 and April 17, 2006, respectively, because April 15 fell on a Sunday in 2001 and a Saturday in 2006.)

6.      A certified Certificate of Assessments, Payments, and Other Specified Matters (Internal Revenue Service Form 4340) creates a rebuttable presumption that a tax was properly assessed pursuant to 26 U.S.C. § 6201 and that notice and demand for payment was sent to the taxpayer as required by 26 U.S.C. § 6303. Hughes v. United States, 953 F.2d 531, 535 (9th Cir. 1992) (Form 4340 sufficient to establish that assessments were made).  Moreover, certified Forms 4340 are self-authenticating and admissible as public records. Id., at 539-40.

7.      Based on the foregoing, the government has proven the amount and propriety of the Assessments.

8.      Third parties -- such as defendant Eileen McGrew -- are not entitled to dispute the validity of assessments with respect to other individuals' tax liabilities. See, e.g,  Al-Kim,Inc. v. United States, 650 F.2d 944, 947 (9th Cir. 1981)("neither the Internal Revenue Code nor the decisions of this court support any right of third parties to contest the merits of a tax assessment.");  Graham v. United States, 243 F.2d 919, 922 (9th Cir. 1957)("[O]nly the taxpayer may question the assessment for taxes").

9.      A lien for unpaid tax liabilities arises in favor of the United States against all property and rights to property owned by the taxpayer as of the assessment date.  26 U.S.C. § 6321 and 26 U.S.C. § 6322.

Section 6321 provides:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interests, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in

8

addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

Section 6322 provides:

Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability or the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

10.     The statutory language governing tax liens "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." United States v. National Bank of Commerce, 472 U.S. 713, 719-720 (1985);  see also, Drye v. United States, 528 U.S. 49, 56 (1999)(citing National Bank of Commerce);  Glass City Bank of Jeanette, Pa. v. United States, 326 U.S. 265, 267 (1945 )(noting that "[s]tronger language could hardly have been selected to reveal a purpose to assure the collection of taxes.").

11.     Accordingly, at the time that Kenneth McGrew's 2000-2005 tax liabilities were assessed -- between 2004 and 2007 -- the United States acquired liens against all of his property, including his community property interest in the Subject Property.

12.     State law governs the nature of the interest a taxpayer has in "property" or "rights to property" to which a federal tax lien attaches. Morgan v. Commissioner, 309 U.S. 78, 82 (1940)("State law controls in determining the nature of the legal interest which the taxpayer ha[s] in property");  United States v. Bess, 357 U.S. 51, 55 (1958) (Internal Revenue Code does not create property rights, but merely attaches federally defined consequences to rights created under state law); United States v. Craft, 535 U.S. 274, 278 (2002)(the federal lien statute attaches federal consequences to rights created under state law); See also,  United

9

States v. National Bank of Commerce, 472 U.S. 713, 722 (1985);  Aguilino v. United States, 363 U.S. 509, 513 (1960);   In re Glad, 66 B.R. 115, 118 (9th Cir. BAP 1986).

13.    A nonliable spouse's community property interest in property subject to federal tax liens does not affect the right of the United States to foreclose on the real property and apply the proceeds to satisfy its liens.  Under section 751 of the California Family Code, each spouse has equal interests in the whole of the community property.  McIntyre v. United States, 222 F.3d 655, 658 (9th Cir. 2000). Thus, the Ninth Circuit has held that California law implicitly gives the husband rights in the wife's share sufficient to meet the requirements for the attachment of tax liens.  Id., (citing Babb v. Schmidt, 496 F.2d 957, 960 (9th Cir. 1974)). When the federal tax liens arise by operation of law, they attach to the entire property held as community property with the taxpayer's spouse. Id.

14.    Accordingly, (1) Kenneth McGrew owned an undivided community property interest in the Subject Property when the tax liabilities were incurred (between 2001 and 2006) and when the Assessments were made (between 2004 and 2007), and (2) by virtue of Kenneth McGrew's community property interest, the Subject Property became subject to federal tax liens to secure the payment of the tax liabilities at the time of the Assessments.  26 U.S.C. §§ 6321, 6322;  United States v. Overman, 424 F.2d 1142 (9th Cir. 1970);  Ackerman v. United States, 424 F.2d 1148 (9th Cir. 1970);  Babb v. Schmidt, 496 F. 2d 957 (9th Cir. 1974); McIntrye v. United States, 222 F.3d 655, 659 (9th Cir. 2000).

15.    Under California law, the entire community is liable for the debts incurred by one of the spouses during the marriage, if the debts were incurred prior to separation.  California Family Code Section 910 provides:

(a)  Except as otherwise expressly provided by statue, the community estate
     is liable for a debt incurred by either spouse before or during marriage,
     regardless of which spouse has the management and control of the property

10

and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt.

 (b) 'During marriage' for purposes of this section does not include the period during which the spouses are living separate and apart before a judgment of dissolution of marriage or legal separation of the parties.

See also, Lezine v. Security Pacific Financial Services, Inc., 14 Cal.4th 56, 64 (1996)(under § 910(a), "the liability of community property is not limited to debts incurred for the benefit of the community, but extends to debts incurred by one spouse alone exclusively for his or her own personal benefit"); In re Mantle, 153 F.3d 1082, 1085 (9th Cir. 1998)(division of community property, not dissolution of marriage, is the event which terminates the liability of community property for a postmarital debt incurred by one of the spouses); In re McCoy, 111 B.R. 276, 279-80, 282 (9th Cir. B.A.P. 1990)(non-debtor spouse's interest in community property not liable for debts incurred after separation).

16.     Accordingly, at the time that the Court issued the Property Distribution Order on or about September 28, 2009, (1) all of Kenneth McGrew and Eileen McGrew's community property -- including the Subject Property -- was liable for Kenneth McGrew's 2000 tax liability (which was incurred on April 15, 2001, when the tax return was due, and before Kenneth McGrew and Eileen McGrew separated), and (2)  Kenneth McGrew's undivided one-half interest in the community property was liable for his tax liabilities for 2001 through 2005 (which were incurred after separation but before the property was divided).

17.     Eileen McGrew's claim that the liens never attached to the property because she obtained an interlocutory divorce decree before the Assessments were made is unavailing, because under California law, the interlocutory decree did not alter the fact that Kenneth McGrew and Eileen McGrew owned the Subject Property as community property.  See, In re Mantle, 153 F.3d 1082, 1085 (9th Cir.

11

1998)(division of community property, not dissolution of marriage, is the event which terminates the liability of community property for a post-marital debt). Further, Eileen McGrew admitted in her answer to the United States of America's complaint that she and Kenneth McGrew owned the Subject Property as community property between 1996 and 2010, during the time period that the tax liabilities were assessed and the tax liens arose.  (See, Complaint, ¶ 28, Answer, ¶ 28).  That admission is binding on Eileen McGrew as a judicial admission, and Eileen McGrew's opposition to the motion for summary judgment fails to cite any specific evidence to the contrary or show that the materials cited by the government (in this case, Eileen McGrew's answer) are insufficient.  See, American Title Insurance Company v. Lacelaw Corporation, 861 F.2d 224, 226. (9th Cir. 1988).  Moreover, Eileen McGrew is collaterally estopped from claiming that she and Kenneth McGrew held the Subject Property as community property, because in distributing assets and liabilities in the Dissolution Proceedings, the court treated the Subject Property as a community asset.  United States v. Mendoza, 464 U.S. 154, 158 (1984) ("under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action, involving a party to the prior litigation").

18.     Under both California and federal law, the tax liens remained attached to the Subject Property and in effect after the court in the dissolution Proceedings awarded the Subject Property to Eileen McGrew pursuant to the Property Distribution Order.

19.     Under California law, a property division pursuant to a marital dissolution has no effect on pre-existing liens. California Family Code Section 916(a) provides:

> The separate property owned by a married person at the time of the division
> [of the community property] and the property received by the person in the

12

division is not liable for a debt incurred by the person's spouse before or during marriage, and the person is not personally liable for the debt, unless the debt was assigned for payment by the person in the division of the property. *Nothing in this paragraph affects the liability of property for the satisfaction of a lien on the property.*

Cal. Fam. Code § 916(a)(2)(Emphasis added). See also, Kinney v. Vallentyne, 15 Cal. 3d 475 (1975)(real property awarded to ex-wife in marital dissolution proceedings as her separate property remained subject to judgment lien recorded by ex-husband's creditors before the marital property division arising from ex-husband's commission of personal torts against creditor victim and the victim's husband); Meija v. Reed, 74 P.3d 166, 172 (2003)("The only statutory exception to the Family Code section 916's grant of immunity from liability is a provision that preserves the liability of property subject to a preexisting lien."); Lezine v. Security Pacific Financial Services, Inc., 14 Cal.4th 56 (1996)(residence that had been awarded to the plaintiff as her sole and separate property in marital dissolution proceedings remained subject to the defendant bank's judgment lien, because the lien attached before the plaintiff had been awarded the property, even though (1) the plaintiff's husband had granted the bank a security interest in the residence without the plaintiff's knowledge or consent; (2) the plaintiff was not aware of the bank's lien at the time of the property division, and (3) the dissolution court had assigned the underlying debt on the loan to the plaintiff's husband); United States v. Berger, 574 F.3d. 1202 (9th Cir. 2009)(government could satisfy criminal restitution judgment imposed on defendant through sale of defendant's and wife's real property, including former wife's one-half community property interest in the sale proceeds, and former wife's half interest could be used to satisfy the judgment, even though she was not involved in any wrongdoing associated

13

with the husband's illegal scheme and even though none of the proceeds of the scheme had been invested in the property). (A criminal restitution order under the Mandatory Victim Restitution Act has the same scope as a federal tax lien. "[A] restitution order under the MVRA is 'a lien in favor of the United States on all property and rights to property of the person.'" Berger, supra, 574 F.3d at 1204 (citing 18 U.S.C. § 3613(c).

20.     The effect under the federal law is the same; once a federal lien attaches to property, it cannot be extinguished by a subsequent transfer. United States v. Donohoe Industries, Inc., 905 F.2d 1325, 1330-31 (9th Cir. 1990) (holding that bank was required to honor IRS levy, because at the time the bank acquired the taxpayer company's accounts receivable, the receivables were subject to federal tax lien).  As the Ninth Circuit stated in Donahoe Industries:

> A federal tax lien attaches to a taxpayer's property when unpaid taxes are assessed, and continues to attach until either the tax is paid or the lien becomes unenforceable because of lapse of time.  26 U.S.C. §§ 6321, 6322. The lien continues to attach to a taxpayer's property regardless of any subsequent transfer of the property. *United States v. Bess*, 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958); *United States v. Oil Resources, Inc.*, 817 F.2d 1429, 1433 n. 3 (9th Cir.1987); *Omnibus Fin. Corp. v. United States*, 566 F.2d 1097, 1103 (9th Cir.1977).

905 F.2d at 1330-31. See also, United States v. Bess, 357 U.S. 51, 57 ("The transfer of property subsequent to the attachment of the lien does not affect the lien."); 26 C.F.R. § 301, 63331-1(a)(1).

21.     Accordingly, neither the Property Distribution Order nor the subsequent grant deed transferring the Subject Property to Eileen McGrew as her sole and separate property affected the liens.

22.     Eileen McGrew's defense that she would qualify as an "innocent spouse" under 26 U.S.C. § 66 is unavailing, because innocent spouse relief only

14

serves to protect a non-liable spouse from personal tax liability and Eileen McGrew has admitted that the Internal Revenue Service has never sought to hold her personally liable for Kenneth McGrew's tax liabilities.  Further, nothing in Section 66 authorizes the Internal Revenue Service to abrogate valid federal tax liens, and the section does not confer jurisdiction on federal district courts to make "innocent spouse" determinations.[1]

23.     26 U.S.C. §§ 7403(a) and (c) provide in pertinent part:

(a) Filing

In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof. . . the Attorney General or his delegate at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability . . . .

(c)  Adjudication and decree

The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court in respect to the interests of the parties and of the United States . . . .

24.     Once the United States establishes that a taxpayer has an interest in property and that the tax lien of the United States has attached to that interest, it is

---

[1] The Section 66 defense is also unavailing because most of the "facts" upon which it is based have not been proved by competent evidence. The defense is based in large part on the Court's findings in the Dissolution Proceedings - - findings which are not binding on the United States of America because it was not a party to the Dissolution Proceedings.

15

well settled that the United States may foreclose its lien against the taxpayer's interest in the subject property.  26 U.S.C. § 7403;  <u>United States v. Rodgers</u>, 461 U.S. 677 (1983) ("<u>Rodgers</u>").

25.     Although, under <u>Rodgers</u>, district courts have limited discretion to not order a foreclosure sale under 26 U.S.C. § 7403, defendants have the burden of proof as to whether a court should use its limited discretion to not issue a foreclosure order.  <u>See</u> <u>United States v. Padilla</u>, 94 A.F.T.R.2d (RIA) 6811, 2004 U.S. Dist. LEXIS 23112, at*4 (E.D. Cal. 2004).  Eileen McGrew has not met that burden, because (1) the Court's ability to its exercise its limited grant of discretion not to foreclose under <u>Rodgers</u> is inapplicable in these circumstances, and (2) in any event, the <u>Rodgers</u> factors do not weigh against foreclosure.

26.     <u>Rodgers</u> limited discretion analysis only applies if a property owner who is not liable for the delinquent tax, also does not have a property interest that is subject to foreclosure.  Although the spouse seeking denial of foreclosure in Rodgers had a community property interest, that was not the interest which the Supreme Court held triggered the court's discretion with respect to ordering foreclosure.  <u>Rodgers</u>, 461 U.S. 677, 687 (1982).  Rather, the Supreme Court was concerned only with the unique provisions of Texas' homestead law which, unlike California community property law, arguably carved out a separate interest from the non-liable spouse.  <u>Rodgers</u>, 461 U.S. at 684.  In California, homesteads do not create a separate interest that is not reached by federal tax liens.  <u>Shaw v. United States</u>, 331 F.3d 493, 497 (9th Cir. 1964).  <u>See</u>, <u>also</u>, <u>United States v. Fitch</u>, 108 A.F.T.R.2d (RIA) 5428, 2011 U.S. Dist. LEXIS 81052, at*13-17 (Dist. Idaho 2011).  <u>Rodgers</u> is inapplicable here, because at the time that Kenneth McGrew incurred the 2000 tax liability, all of Kenneth and Eileen McGrew's community property --including Eileen McGrew's undivided one half interest in the Subject Property -- was liable for the tax and thus subject to a federal tax lien under 26 U.S.C. §§ 6321 and 6323.  As previously discussed, Eileen McGrew acquired her

16

present interest in the Subject Property subject to that lien, as well as the liens arising from the 2001 through 2005 tax liabilities. Accordingly, without an interest that is not subject to the tax liens, Eileen McGrew has no right or claim to block a forced sale, and the Court's limited discretion under <u>Rodgers</u> does not come into play.

27.     Even if <u>Rodgers</u> limited discretion was applicable, foreclosure still would be warranted, because the <u>Rodgers</u> factors which are required to be considered in such circumstances do not weigh against a forced sale.

28.     In <u>Rodgers</u>, the Supreme Court listed four factors that a court may consider in determining whether it should exercise its limited discretion to deny foreclosure, <u>if</u> a party has a separate property interest that is not subject to the government's tax liens.  <u>Rodgers</u>, 461 U.S. at 710-11.

29.     The first factor is the economic prejudice to the United States of a partial sale.  <u>Id</u>. At 710.   This factor weighs in favor of foreclosure, because the Subject Property is a single family residence, and a sale of a partial interest in the property would be impractical and would result in severe prejudice to the United States.

30.     The second factor is the third party's legal expectations that the property would be protected from a forced sale.  <u>Id</u>. at 710-11.  This factor also weighs in favor of foreclosure.  Although Eileen McGrew has claimed that she expected, based on the Property Distribution Order and her consultation with an unidentified tax preparer in 2006, that the government would not seek to foreclose on the liens, no such expectation could have been reasonable based on the law (and thus "legally recognized") in light of California community property law, the statements of Eileen McGrew's counsel regarding the lien in the 2008 Mandatory Settlement Conference Statement and 2009 Trial Brief, and the fact that the Property Distribution Order specifically noted that there was a tax lien on the

property.[2]  (The fact that the Court in the Dissolution Proceedings Court confirmed the tax liabilities as Kenneth McGrew's personal responsibility may be relevant between Eileen McGrew and Kenneth McGrew, but in no way suggests that the Court was attempting to vitiate the federal tax liens - - something the Court, in any event was powerless to do under both federal and California law.)

31.    In this regard, the statements by Eileen McGrew's counsel in the mandatory settlement conference statement and trial brief in the Dissolution Proceedings, as discussed above at Findings of Fact 14 and 15, constitute admissions of a party opponent under Fed. R. Ev. 801(d)(2).  See, e.g., Totten v. Merkle, 137 F.3d 1172,1176 (9th Cir. 1998).

32.    The third Rodgers factor is potential prejudice to a third party by virtue of relocation costs and potential under compensation.  Id. at 711. This factor, standing alone, would not be sufficient to block a foreclosure, and in any event, would not support such a result.  Although Eileen McGrew has argued that the third factor weighs against foreclosure because a forced sale would require her to relocate, the need to relocate is not the type of prejudice that Rodgers contemplated.  Rather, the third Rodgers factor envisions a special circumstance beyond "the inherent inequity of being removed from one's home," because if that were sufficient, "the government could never foreclose on a jointly owned residence -- a result clearing untenable under § 7403."  United States v. Bierbrauer, 936 F.2d at 375-76.  Moreover, it would be an abuse of discretion to block a forced sale on the third factor alone.  United States v. Burtsfield, 556 F.Supp. 2d 1172, 1176 (D. Mont. 2008)(citing United States v. Gibson, 817 F.2d 1406(9th Cir. 1987)(refusal to foreclose based only on wife's testimony on third factor of

---

[2] Eileen McGrew could not reasonably have relied on the Property Distribution Order, because the order specifically stated that there was a tax lien on the property.  She could not have had a legally recognized expectation based on the advice of the tax preparer, because the tax preparer's alleged advice was blatantly contrary to law.

Rodgers analysis, that she had no other residence to go to if the court were to order a forced sale, was abuse of court's limited discretion).  As the Court indicated in Burtsfield, "[a] certain degree of prejudice is undoubtedly present in every case where the Court authorizes the forced sale of property in which a non-liable third party has an ownership interest."  United States v. Burtsfield, 556 F.Supp.2d 1172, 1176 (D. Mont. 2008)(citing United States v. Bierbrauer, 936 F.2d 373, 375-76 (8th Cir. 1991).

33.   In this case, there is no evidence that Eileen McGrew would suffer any prejudice beyond the inherent inequity of being removed from her home if the United States were permitted to foreclose on the Subject Property. Eileen McGrew's arguments that she may not be able to purchase a comparable residence in the same neighborhood as the Subject Property and that her son may have to attend a different school in the event of a forced sale are insufficient grounds for the Court to refuse to order foreclosure or to find that foreclosure is not warranted.

34.   The fourth Rodgers factor is the comparative property interests of the delinquent property of the taxpayer, which requires comparing the size of the interest to which the liens attach to the interest to which the liens do not attach.  Id. at 711.  The fourth factor also weighs in favor of foreclosure, because, as previously explained, the entirety of the Subject Property is subject to the tax liens.

35.   Accordingly, the Court declines to exercise its limited discretion under Rodgers not to order a forced sale of the Subject Property.

36.   Based on the foregoing, the Court concludes that there are no issues of material fact and that the United States has met its burden of proving that it is entitled to summary judgment granting a foreclosure order with respect to the Subject Property.

37.   Finally, pursuant to 26 U.S.C. § 7403, the Court must determine the merits of all claims to the Subject Property.  Based on the FTB Stipulation and the

undisputed facts regarding the PHH mortgage, the proceeds of the sale of the Subject Property should be disbursed as follows:

(a) First, in payment of any outstanding real property taxes owing with respect to the Subject Property;

(b) Second, in payment of the outstanding balance on the PHH Loan;

(c) After the PHH Loan is paid in full, the remainder of the proceeds shall be split in half – with one half attributed to Kenneth McGrew's former community property interest, and the other half attributed to Eileen McGrew's former community property interest.  The proceeds will then be disbursed as follows.

(i) from Kenneth McGrew's half, in satisfaction of Kenneth McGrew's outstanding California State income tax liabilities for 2001; and then

(ii) equally from Eileen McGrew's half and Kenneth McGrew's half, in satisfaction of Kenneth McGrew's outstanding federal income tax liabilities for 2000.

(iii) After the federal income tax liability for 2000 is satisfied,
any remaining proceeds from Eileen McGrew's half should be disbursed to Eileen McGrew.  The remaining proceeds from Kenneth McGrew's half should be disbursed as follows:

(aa)   first, to pay the outstanding 2001 federal tax liability;

(bb)   second, to pay the outstanding 2003 California tax liability;

20

(cc)   third, to pay the outstanding 2004 California tax liability;

(dd)  fourth, to pay the outstanding 2002 federal tax liability;

(ee)   fifth, to pay the outstanding 2003 federal tax liability;

(ff)  sixth, to pay the outstanding 2004 federal tax liability;

(gg)  seventh,  to pay the outstanding 2005 federal tax liability;

(hh)  eighth, to pay the outstanding 2002 California tax liability;

(ii)  ninth, to pay the outstanding 2005 California tax liability; and

(jj) tenth, to pay the outstanding 2006 California tax liability.

Any surplus remaining after the foregoing disbursements shall be deposited with the Clerk of the Court.

38.     Based on the foregoing, the United States of America's motion for summary judgment is granted, defendant Eileen McGrew's cross-motion for summary judgment is denied, and the February 15, 2015 trial date is vacated.

39.     Any uncontroverted conclusion of law or mixed conclusion of fact and law deemed more appropriately designated as a conclusion of fact is incorporated herein as a statement of fact.

Dated: December 19, 2014

_____
HON. MANUEL L. REAL
United States District Judge

Submitted By:


_____
PAUL H. ROCHMES
Assistant United States Attorney

21